Hast, J.
 

 It is claimed by the defendant, appellant herein, that there was a flagrant violation of Section 13448-1, G-eneral Code, a section of the Criminal Code of Ohio, to his prejudice. The section in question is as follows:
 

 “When a cause is finally submitted, the jurors must be kept together in a convenient place, under the charge of an officer, until they agree upon a verdict, or are discharged by the court. Provided, that the court may, at its discretion, permit the jurors to separate during the adjournment of court over night, under proper cautions, or under supervision of an officer or officers.
 
 Such officer or officers shall not permit a communication to be made to them, nor malte any himself, except to ash if they have agreed upon a verdict, unless by order of the court;
 
 nor shall he communicate to any person, before the verdict is delivered, any matter in relation to their deliberation; provided, however, that upon the trial of any prosecution for misdemean- or, the court shall have discretion to permit the jury to separate during their deliberation, or upon adjournment of the court over night.” (Italics ours.)
 

 The state takes the position that the affidavits and testimony of the jurors regarding an alleged communication of the court bailiff to the jurors in the jury room are not, on motion for new trial, admissible to impeach the jury’s verdict without the prior intro due
 
 *426
 
 tion of evidence
 
 aliunde,
 
 and that it does not affirmatively appear from the record that the accused was prejudiced or was prevented from having a fair tidal by reason of the alleged misconduct on the part of the court bailiff.
 

 The Court of Appeals affirmed the judgment of the-trial court in this case and held that while the communication of the court bailiff to the jurors was outside the limits of his rights fixed by the statute and “was highly improper, because such a statement by the bailiff was likely to be regarded by the jurors as an authoritative statement and to have a tendency to influence some of the jurors to modify their views for the purpose of being able to agree,” yet, since nopropei; foundation or basis had been laid for the impeachment of the verdict of the jurors by evidence
 
 aliuncle,
 
 said to be required by the rule stated in the-case of
 
 Lund
 
 v.
 
 Kline,
 
 133 Ohio St., 317, 13 N. E. (2d), 575, “the affidavits and testimony of the jurors were inadmissible * * * and'the trial judge should not have .taken the testimony of the jurors. ’ ’ The Court of Appeals, in attempting to follow the rule laid down by this court in the case above noted, was fully justified in this view.
 

 But since the bailiff clearly violated the statute above referred to, and since in the opinion of the Coui’t of Appeals, concurred ixx by this court, the violation was prejudicial to the lights of. the defendant, this court is constrained to re-examine its pronouncement in
 
 Lund
 
 v.
 
 Kline, supra,
 
 to determine whether the rule there laid down must be applied in this case.
 

 In the first place, the
 
 Lund case
 
 was a civil actioxx, not a criminal or gmsi-criminal one as this case is. The court held in that case that while the slips of paper used by the jurors as ballots indicated a quotient verdict,' sxxch ballots did xxot show any irregularity tending to impeach the verdict, axxd, therefore, did not “con
 
 *427
 
 stitute evidence
 
 aliunde
 
 sufficient to form the basis for the admission of affidavits of jurors to impeach their own verdict.”
 

 The so-called
 
 aliunde
 
 rule, generally recognized by the courts since the day of Lord Mansfield who is supposed to have first announced it in the case of
 
 Vaise
 
 v.
 
 Delaval,
 
 1 T. R., 11 (K. B.), 99 Eng. Rep. R., 944, is-to the effect that the verdict of a jury may not be impeached by the evidence of a member of the jury unless foundation for the introduction of such evidence is first laid by competent evidence
 
 alunde, i. e.,
 
 by evidence from some other source.
 
 Farrer
 
 v.
 
 State,
 
 2 Ohio St., 54;
 
 Kent
 
 v.
 
 State,
 
 42 Ohio St.,
 
 426; Goins
 
 v.
 
 State,
 
 46 Ohio St., 457, 21 N. E., 476;
 
 Long
 
 v.
 
 Cassiero,
 
 105 Ohio St., 123, 136 N. E., 888;
 
 Schwindt v. Graeff,
 
 109 Ohio St., 404, 142 N. E., 736;
 
 Emmert
 
 v.
 
 State,
 
 127 Ohio St., 235, 187 N. E., 862, 90 A. L. R., 242.
 

 Among the reasons given by the courts for the adoption of this rule are that a juror comes into court with bad grace in attempting to prove his dishonorable conduct and to stigmatize his companions; that the rule is based upon considerations of public policy, which, if not adhered to, would encourage further litigation and indefinitely postpone its termination; that to permit a juror to impeach the verdict by his testimony would allow a dissatisfied or corrupt juror to destroy a verdict after he had assented to it; and that to permit such testimony would destroy the privacy of the deliberations of the jury and expose the jurors to criticisms and embarrassment.
 

 The rule in question has .been severely criticized by some courts,' has been repudiated by others, and has been changed by statute in some jurisdictions. This court has applied the rule on various occasions, but with caution in order to prevent it from working an injustice upon the litigant against whom a verdict has been returned.
 

 
 *428
 
 In the case of
 
 Farrer
 
 v.
 
 State, supra,
 
 a criminal action, the court held that after a foundation had been laid by testimony
 
 aliunde
 
 as to the misconduct of the jury, in reading newspaper accounts of the trial, the testimony of the jurors themselves became competent. Judge Corwin, at page 56 said: “I have no doubt the general rule of policy, and a just regard to the sanctity of the province in which the jury is appointed to act, are against the reception of such evidence, in an ordinary case; but in one where life, or even liberty, is threatened by misconduct of the jury, it will readily be conceived that circumstances may exist which would not only admit, but demand, the examination of members of the jury as to their alleged bad behavior.”
 

 In the case of
 
 Goins
 
 v.
 
 State, supra,
 
 wherein the defendant was charged with murder in the first degree, the affidavits of two jurors were tendered showing that the verdict convicting the defendant of second degree murder had been reached by lot. The judgment of the lower courts in that case was reversed upon other grounds, thereby making it unnecessary to determine the validity of the rule rejecting the testimony of the jurors. However, Judge Bradbury, at page 472, said: “But a case like this at bar strains the principle to its utmost tension, and suggests a doubt whether there may not be found a carefully guarded exception to a rule, the universal application of which may present a spectacle so discreditable to our jury system.”
 

 In
 
 Schwindt
 
 v.
 
 Graeff, supra,
 
 a will contest case, the affidavits of two of the jurors who had not joined in the verdict were offered to show that while the jury was divided eight to four, one of the four changed his vote as the result of a toss of a coin and nine jurors thereupon returned a verdict. The evidence was excluded and the judgment on the verdict was sustained. Judge Robinson of this court, in writing the opinion in
 
 *429
 
 that case in which the rule was sustained, said at page 408:
 

 “While this cause presents a situation which strains the rule almost to the breaking point, and demonstrates that every hard and fast rule, whatever its origin, will not further the ends of justice in all cases, yet, so long as we are to continue to be governed by law, rather than by men, a rule must be adhered to which is designed to accomplish justice in the greatest number of cases, and, if modified or abrogated, it must be doné by that branch of the government specially empowered to legislate, rather than by that branch empowered only to propound law and administer justice according to existing law.” Three members of this court dissented from the judgment in that case.
 

 A recent case in this court relating to this question, very similar in its facts to the case at bar, is that of
 
 Emmert
 
 v.
 
 State, supra.
 
 In that case court officers unlawfully communicated with the jurors in their charge and custody while outside of the jury room but .during the period of the jury’s deliberations. This court reversed the judgment based upon the verdict of the jury in that case on the ground that since the irregular conduct of the court officers took place outside the jury room, the testimony of the jurors as to the communications should have been received. Judge Bevis, who wrote the opinion in that case, had occasion to use this language:
 

 “If, however, protection of the privacy of deliberation be regarded as the chief end to be subserved in this connection, there seems to be no good reason why jurors may not testify as to events transpiring outside the jury room,
 
 or which constitute no part of their deliberations.
 
 The possibility that any of their number might be called upon to testify concerning unwarranted communications made by court officers or others would put no damper upon the give and take of delib
 
 *430
 
 eration, so necessary to final agreement. This view of the matter has found substantial expression in many well-considered cases. 31 L. R. A. (N. S.), 930, note.” (Italics ours.)
 

 This court is of opinion that the present case can be and should be distinguished from the former decisions of this court insofar as they support the rule in question. Here, there was no misconduct on the part of the jurors themselves and their testimony was not offered for the purpose of showing misconduct of any one of their number. The testimony was not offered to disclose anything concerning their deliberations or the manner of reaching their verdict. The testimony related solely to the misconduct of an officer of the court while in their presence. Such testimony upon the part of the jurors is not open to the vice which is said to require the adoption of the rule, and does not come within the reasons for its adoption as above noted.
 

 The fact that in this case the communication took place in the jury room rather than outside as in the case of
 
 Emmert
 
 v.
 
 State, supra,
 
 in the opinion of the court, presents a distinction without a substantial difference in legal effect or practical results, and should not require a different judicial determination as to the admissibility of the proof necessary to show an improper communication to the jury.
 

 It is proper here to observe that the courts of some other states have adopted the rule that the misconduct of a bailiff or other person having official charge of a jury may be properly shown by the testimony of the jurors themselves without testimony
 
 aliuncle. Alabama Fuel & Iron Co.
 
 v.
 
 Rice,
 
 187 Ala., 458, 65 So., 402;
 
 Heller
 
 v.
 
 People,
 
 22 Col., 11, 43 P., 124;
 
 State
 
 v.
 
 La-Grange,
 
 99 Ia., 10, 68 N. W., 557;
 
 People
 
 v.
 
 Smith,
 
 187 N. Y. Supp., 836.
 

 In view of the fact that the statute specifically provides that the bailiff shall not, unless by order of the
 
 *431
 
 court, make any communication to the jurors except to ask if they have agreed upon a verdict, it seems to the court that the G-eneral Assembly, in the enactment of this mandatory statute, had in contemplation that a violation thereof could be shown by and through the only persons, outside the bailiff himself, who could have knowledge of the facts.
 

 The gross misconduct of the bailiff as an officer of the court was clearly shown in this case by undisputed evidence, and, under the circumstances, must-be presumed to have been prejudicial to the defendant. 46 Corpus Juris, 155, Section 122;
 
 Mattox
 
 v.
 
 United States,
 
 146 U. S., 140;
 
 State
 
 v.
 
 Peirce,
 
 178 Ia., 417, 159 N. W., 1050;
 
 Coolman v. State,
 
 163 Ind., 503, 72 N. E., 568;
 
 Northern Ohio Traction Co.
 
 v.
 
 Mitchell,
 
 33 C. D., 304, 21 C. C. (N. S.), 177, affirmed,
 
 Northern Ohio Traction Co.
 
 v.
 
 Mitchell,
 
 74 Ohio St., 485, 78 N. E., 1133.
 

 The trial court should have granted a new trial. The judgment of the Court of Appeals, affirming the judgment of the Common Pleas Court, is reversed and the cause is remanded for a new trial.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Zimmerman, Bell and Turner, JJ., concur.
 

 Williams, J., not participating.