DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant/Cross-Appellee, Linda J. Brody, Administratrix of the Estate of Martin Brody and the heirs of Martin J. Brody appeal from the verdict rendered in favor of Appellee/Cross-Appellant Columbia Gas of Ohio, Inc. after trial to a jury in the Medina County Court of Common Pleas. Cross-Appellant appeals from the trial court's denial of Cross-Appellant's Motion for Summary Judgment. We reverse and remand for a new trial and affirm the trial court's denial of Cross-Appellant's motion for summary judgment. *Page 2 
 {¶ 2} Appellant/Cross-Appellee Linda J. Brody and the other heirs of Martin J. Brody (collectively the "Brody family") brought this wrongful death action against Appellee/Cross-Appellant Columbia Gas of Ohio, Inc. ("Columbia Gas") after Martin J. Brody, an employee of Columbia Gas, was killed by a drunk driver while working for Columbia Gas on Eastlake Road in Lafayette Township in Medina County, Ohio. The drunk driver (James Woods) was convicted of aggravated vehicular homicide for the death of Mr. Brody.
 {¶ 3} On October 3, 2004, Columbia Gas filed for summary judgment ("Motion for Summary Judgment"), which motion was denied by the trial court on December 16, 2005, in a single page journal entry, without analysis. The matter proceeded to trial on March 27, 2006. The trial lasted two weeks and resulted in a defense verdict with six of the eight jurors in agreement as to this verdict. The verdict was read into the record without objection. The verdict form contains the following typed language:
 "We the jury, being duly impaneled and sworn and affirmed, find the issues in this case in favor of the Defendant,"
 Following the typed words, the jury wrote:
 "Columbia Gas of Ohio Inc. We agree that the intent was not in place, but that negligence existed. We add this note to encourage the defendant to change or enhance their policy or training."
 {¶ 4} Following the verdict, Appellants learned of alleged ex parte communications between the trial judge and the jury and filed a motion for new trial on April 6, 2006 ("Motion for New Trial"). The Motion for New Trial *Page 3 
requested that the trial court analyze the impact of the ex parte communications on the jury's deliberation and order a new trial if required. Columbia Gas opposed the Motion for New Trial on April 13, 2006. After initially scheduling a hearing to address the matter and then canceling it without explanation, the trial court denied the Motion for New Trial in a single page journal entry, dated June 29, 2006, without analysis. It is from this journal entry that Appellants appeal, raising one assignment of error. In its cross-appeal, Columbia Gas appeals the trial court's denial of its Motion for Summary Judgment, raising one assignment of error.
 Appellants' Assignment of Error "The trial court erred in denying [Appellants'] Motion for a New Trial, in light of the Trial Court's prejudicial communication with the jury after the case was submitted to the jury and before the jury returned a verdict."
 {¶ 5} Appellants assert that the trial court erred when it failed to grant the Motion for New Trial after the trial judge had ex parte communications with the jury during deliberations without notifying counsel or the parties, and/or putting the communications on the record. Appellants assert, based on newspaper interviews with jurors after the verdict was rendered, that the jury had been unable to reach a verdict until the judge told the jury, in an ex parte communication, that they could write an admonition to Columbia Gas on the verdict form. Moreover, the Brady family notes that it is impossible for this court to review the possible *Page 4 
effect of the ex parte communication because the judge failed to enter the communication on the record.
 {¶ 6} Columbia Gas asserts that the Brody family waived the right to challenge the verdict when they did not object to it at trial. Further, Columbia Gas asserts that the ex parte communication was not substantive or prejudicial. Finally, Columbia Gas asserts that the newspaper articles attached to the Motion for New Trial to evidence the effect of the ex parte communication are not sufficient to impeach a verdict.
 {¶ 7} On the issue of waiver, it is true that "[a] reviewing court will not consider as error any issue that a party was aware of but failed to bring to the trial court's attention." Kader v. Nixon (Oct. 11, 2000), 9th Dist. No. 99CA007307, at *3, citing Schade v. CarnegieBody Co. (1982), 70 Ohio St.2d 207, 210. It is also true that "[a] party waives the right to contest an issue on appeal if that issue was in existence prior to or at the time of trial and the party did not raise it at the appropriate time in the court below." Id., citing StoresRealty Co. v. City of Cleveland (1975), 41 Ohio St.2d 41, 43. However, the Brody family asserts they were not aware of the ex parte communication until after the verdict was rendered and Columbia Gas has not argued otherwise. To require the Brody family to object to conduct impacting a verdict where the secretive nature of the conduct is the very issue being appealed would leave them without a remedy. The record contains the jury verdict portion of the transcript and our review of that part of the *Page 5 
trial does not provide any indication that the trial judge had communicated ex parte with the jurors so as to give rise to an obligation to object to such communication. The Brody family did not waive its right to assert this assignment of error.
 {¶ 8} "To prevail on a claim of prejudice due to an ex parte communication between the judge and jury, the complaining party must first produce some evidence that a private contact occurred between the judge and jurors, without full knowledge of the parties, which involved substantive matters." State v. Tate (Dec. 11, 1985), 9th Dist. No. 12111, at *1, citing State v. Jenkins (1984), 15 Ohio St.3d 164, 236-37. There is a presumption that an ex parte communication between a judge and a jury is prejudicial although that presumption is not conclusive.State v. Schiebel (1990), 55 Ohio St.3d 71, 84. Thus, once such ex parte communication is shown, the burden shifts to the opposing party to demonstrate that the communication was either of a procedural nature or a harmless communication. See, id.
 {¶ 9} Columbia Gas has not denied the ex parte communication occurred or claimed that the newspaper articles are false. Moreover, Columbia Gas has not provided any evidence to rebut the presumption that the ex parte communication was prejudicial and/or of a procedural nature. This is primarily due to the fact that that there is no record of the ex parte communication. Absent any evidence to *Page 6 
rebut the presumption of prejudice and/or to establish that the communication was procedural, we find the ex parte communication to be substantive and prejudicial.
 {¶ 10} We finally note, as we did in Tate, that the prejudicial effect of an ex parte communication could have been determined after-the-fact by conducting a hearing as set forth by the United States Supreme Court in Rushen v. Spain (1983), 464 U.S. 114. In Rushen, the U.S. Supreme Court stated:
 "When an ex parte communication relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties. The prejudicial effect of a failure to do so, however, can normally be determined by a post-trial hearing. The adequacy of any remedy is determined solely by its ability to mitigate constitutional error, if any, that has occurred. Post-trial hearings are adequately tailored to this task." Rushen, 464 U.S. at 119-21 (internal citations omitted).
 {¶ 11} There was not a hearing in the instant matter. The Brody family moved the trial court to order a new trial and/or to analyze the impact of the ex parte communications and order a new trial if required, but the trial court denied the Motion for New Trial without explanation or analysis, and without conducting a post-trial hearing as suggested inRushen. Accordingly, as noted above, without a record or a hearing, Columbia Gas cannot rebut the presumption that the communication was substantive and prejudicial.
 {¶ 12} Columbia Gas asserts that the only evidence of the prejudicial effect of the ex parte communication was set forth in the newspaper articles attached to the Motion for New Trial and such evidence is not sufficient to impeach a verdict. As noted above, Columbia Gas has not denied the ex parte communication *Page 7 
occurred. Thus, it is only the prejudicial effect of ex parte communications that the newspaper articles are offered to support.
 {¶ 13} We begin by noting that the aliunde rule is inapplicable in this case. The Ohio Supreme Court has expressly held the rule to be inapplicable where the irregularity involved is due to the misconduct of an officer of the court. State v. Adams (1943), 141 Ohio St. 423,430-31. Thus, because a judge is an officer of the court, a juror may provide evidence of an irregularity related to an ex parte communication with a judge even though that irregularity affected the jury deliberations and verdict.
 {¶ 14} Civ. R. 59 does not require an affidavit in support of a motion for new trial and Columbia Gas has cited no authority in support of its proposition that the newspaper articles are not sufficient. Moreover, Columbia Gas has not disputed that the newspaper articles themselves are authentic. It is only the statement made by the jury foreman as to the effect of the ex parte communication that is in dispute.
 {¶ 15} It is undisputed that the ex parte communication took place and there is no evidence to rebut the presumption of the substantive nature of the communication and its prejudicial effect. Moreover, there is no record or entry from the trial judge showing otherwise or even addressing the issue. Accordingly, we sustain the Brody family's assignment of error, reverse the judgment of the trial court and remand this matter back to the trial court for a new trial. *Page 8 
 Cross-Appellant's Assignment of Error "The trial court erred in failing to grant summary judgment to Columbia Gas of Ohio ('Columbia Gas') on the basis that the intervening act of Mr. Brody being hit by a drunk driver convicted of aggravated vehicular homicide broke the causal connection, if any, between Columbia Gas's actions and Mr. Brody's death."
 {¶ 16} Cross-Appellant, Columbia Gas, asserts that the trial court erred when it denied its motion for summary judgment. Columbia Gas asserts that there is no genuine issue of material fact that the conduct of Mr. Woods in driving drunk broke the causal connection between Columbia Gas's actions and Mr. Brody's death.
 {¶ 17} Generally, "[a]ny error by the trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting judgment in favor of the party against whom the motion was made." Continental Ins. Co. v.Whittington (1994), 71 Ohio St.3d 150, 156; Pickett v. Pro CarAssoc, 9th Dist. No. 22953, 2006-Ohio-3342, at ¶ 5; Standen v.Smith (Feb. 20, 2002), 9th Dist. No. 01CA007886. However, "a trial court's denial of a motion for summary judgment is reviewable on appeal by the movant from a subsequent adverse final judgment." Balson v. Dodds (1980), 62 Ohio St.2d 287, 289. Thus, because of our ruling as to Appellant's first assignment of error remanding this matter back to the trial court for a new trial, we can ignore *Page 9 
the effect of the first trial and review the trial court's denial of Columbia Gas's motion for summary judgment.
 {¶ 18} Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated;
 "(2) the moving party is entitled to judgment as a matter of law; and
 "(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 19} Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court.McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine *Page 10 
dispute over the material facts exists. Henkle v. Henkle (1991),75 Ohio App.3d 732, 735.
 {¶ 20} It is well established Ohio law that:
 "In order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Kidder v. Cavanaugh (Jan. 28, 1998), 9th Dist. No. 18343, at *1, citing Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
 {¶ 21} Columbia Gas asserts that the Brody family cannot demonstrate either the first or second Fyffe factor because the conduct of Mr. James in driving drunk and hitting Mr. Brody breaks the causal connection between Columbia Gas's alleged negligent conduct and Mr. Brody's death. Without a causal connection, there is no genuine issue of material fact to demonstrate that Columbia Gas had knowledge of the danger and/or that injury was substantially certain to occur. Causation requires "`some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.'" Lytle v. McClain, 9th Dist. No. 03CA008400, 2004-Ohio-4572, at ¶ 23, quoting R.H. Macy Co., Inc. v.Otis Elevator Co. (1990), 51 Ohio St.3d 108, 110 (internal citations omitted). *Page 11 
 {¶ 22} This "`reasonable connection,' [however], may be severed by an intervening act." Lytle at ¶ 23, citing Mudrich v. Standard Oil Co.
(1950), 153 Ohio St. 31, 37. "`Whether an intervening act breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence.'" Id., quoting Mudrich, 53 Ohio St. at 39.
 {¶ 23} "[T]he connection between the defendant's negligence as a proximate cause of an injury is not broken, [however], if an intervening event is one which might in the natural and ordinary course of things be anticipated as reasonably probable [.]" Thomas v. Speedway Superamerica,LLC, 9th Dist. No. 06CA0004, 2006-Ohio-5068, at ¶ 15, quoting Taylor v.Webster (1967), 12 Ohio St.2d 53, 56.
 {¶ 24} We find there to be a question of fact as to whether or not the intervening event is one which might in the natural course of things be anticipated as reasonably probable, thereby defeating the intervening cause defense argued by Columbia Gas to defeat the first and secondFyffe requirements. We find there to be a genuine issue of material fact based on both parties' experts' affidavits and related reports filed in support of Columbia Gas's summary judgment motion and the Brody Family's brief in opposition, the additional memorandum in support of Columbia Gas's motion for summary judgment, and other deposition testimony as to the cause of the accident, including whether an ordinary driver would have *Page 12 
acted in the same way as did Mr. James given the circumstances, i.e., the creation and operation of the work zone, the weather, the lighting, the landscape, etc.
 {¶ 25} Henry Lipian was engaged by Cross-Appellant to offer an opinion as to the motor vehicle collision that killed Mr. Brody. He is president and a senior accident reconstructionist for Introtech Crash Reconstruction Services and is accredited by the Accreditation Commission Traffic Accident Reconstructionists (ACTAR #83). In preparing his report, Mr. Lipian reviewed police reports, OSHA reports, photographs, deposition transcripts, vehicle specifications, the Ohio Manual of Uniform Traffic Control, astronomical data, other legal documents and the forensic mapping, and crash site inspection reports. Based on his review and analysis of all of the above, Mr. Lipian opined to a reasonable degree of reconstructive certainty, as follows:
 "The primary cause of this collision was the psychophysical impairment with associated increase in perception/reaction times by Mr. Woods. The issue of traffic control devices is a non-issue for the cause of the crash."
 {¶ 26} William J. Vigilante, Jr., Ph.D was engaged by Cross-Appellee to determine the causal factors of the collision and whether the accident was foreseeable. He is a human factors psychologist employed by Robson Forensic, Inc. with an extensive curriculum vitae. In preparing his report, Dr. Vigilante reviewed the police reports, Ohio traffic accident report, deposition transcripts, Cross-Appellant's motion for summary judgment, additional memorandum in support of the motion for summary judgment and answers to the Brody family's *Page 13 
discovery requests, the OSHA citation and related documents, photographs, site inspection reports, vehicle inspection reports, and John Messineo's affidavit. Based on his review and analysis of the above, Dr. Vigilante opined, in relevant part:
 "2. Woods' [perception/reaction time] was within the limits of a median driver confronted with an unexpected roadway obstacle.
 "3. Woods was driving in a properly attentive manner of a median person at the time of the collision.
 "4. Woods was not able to see Brody or the work zone sign due to the disability glare caused by the truck headlights in enough time to react to their presence.
 * * *
 "6. Woods' action of swerving hard to the right which resulted in his leaving the roadway was foreseeable and predictable based upon human tendencies when faced with an unexpected hazard.
 * * *
 "8. The employer had a responsibility to provide their employees with adequate training * * * to ensure their employees were properly setting up and dismantling work zones and placing the correct number of Work Zone Ahead signs.
 "9. The employer failed to provide their employees with adequate training, supervision and the necessary job aids with respect to the proper and safe method of setting up and dismantling a work zone, determining road speed limits, and where and how many Work Zone Ahead signs to place and when to use a flagger.
 "10. The employer failed to provide adequate evaluation, incentive, and enforcement to ensure their employees were properly setting up and dismantling work zones.
 "11. The employer's failure to provide adequate training, supervision, and the necessary job aids resulted in their field crews *Page 14 
 relying on gut instinct to haphazardly determine where and how many Work Zone Ahead signs to place.
 "12. The employer's failure to provide adequate training, supervision and necessary job aids further resulted in Brody implementing a procedure to retrieve the improperly placed sign, putting him in a dangerous situation and was a cause of his injury.
 "13. The employer's requirement of work crews to be working on or near active high speed roads and failure to provide adequate training, supervision, and necessary job aids for required work zone setup and take down made it a substantial certainty that one of their employees would be placed in a dangerous situation similar to Brody's leading to serious injury or death.
 "14. Had the work zone been properly setup[,] the collision would not have occurred. Had the employer provided adequate training, supervision, and the necessary job aids, the field crew would have properly set up the work zone ahead sign on the near side of the hill crest and the collision would have not occurred."
 {¶ 27} John Messineo was engaged by Cross-Appellee to conduct a site inspection and render an opinion as the cause of the accident and to review and render an opinion as to Mr. Lipian's expert report. He is an engineer employed by Robson Forensic, Inc. In preparing his report, Mr. Messineo reviewed the OSHA investigation; Ohio traffic accident report related to James Woods; Ohio accident traffic report related to Mr. Brody's vehicle; the police report; photographs; the motion for summary judgment and responses and supplement thereto; affidavits of Mark Bauer, Rose Winterstein, Brian Parsley, Officer Simonton, Henry Lipian and Bonnie Lucas (first and second); deposition transcripts; the OSHA settlement agreement; Columbia Gas's responses to discovery requests; and Dr. Vigilante's *Page 15 
expert report. Mr. Messineo also reviewed the applicable traffic control standards. Based on his review of the foregoing, Mr. Messineo criticized the methodology used by Mr. Lipian and opined, in relevant part:
 "15. According to my previously `calculated' SSD [stopping sight distance] of 355 feet for Woods' truck at 45 MPH and our field measurements of actual Sight Distance at the scene of the incident, Woods would not have had enough time, after cresting the hill, to perceive Brody's truck as a potential hazard and then come to a complete stop. Columbia Gas supervisors knew that the SSD for the `Utility Work Ahead' sign placed for eastbound traffic on Eastlake Road was dangerously inadequate and that it was a substantial certainty that Brody would be injured or killed if he was required to retrieve it." (Emphasis sic.)
 {¶ 28} Finally, we note the Columbia Gas policy set forth in Rule 2.1(b) of the Policy and Procedure Manual, which states that, "[v]ehicles should be parked in the same direction as the flow of traffic unless the person-in-charge feels that parking the vehicles facing oncoming traffic is necessary due to work requirements." (Emphasis added.) Mr. Massineo opines that this policy, especially at night, is against industry practice. Mr. Parsley, a safety expert employed by Defendant NiSource, testified that the Policy and Procedure Manual is the primary written training document for Columbia Gas employees. Mr. Parsley also testified that there is no policy for the retrieval of signs during nighttime hours set forth in the manual and that it is not uncommon for workers to use headlights to warn drivers of their presence. Thus, there is a genuine issue of material fact as to the role of Mr. Brody's parking location in the accident and Columbia Gas's responsibility for that parking location. *Page 16 
 {¶ 29} The above opinions demonstrate a genuine issue of material fact as to the objective cause of the accident, i.e., whether the accident would have occurred due to the many factors addressed by the experts in their reports and/or Mr. Brody's parking location, regardless of the fact that Mr. Woods was intoxicated. Thus, there is a genuine issue of material fact as to whether or not Mr. Woods's conduct was an intervening cause of the accident and whether the condition or the work zone was a dangerous one substantially certain to cause death or serious injury. The trial court properly denied summary judgment.
 {¶ 30} Cross-Appellant's assignment of error is overruled.
 {¶ 31} The Brody family's assignment of error is sustained. The trial court's judgment is reversed and this matter is remanded back to the trial court for a new trial. Columbia Gas's assignment of error is overruled and the trial court's judgment denying the motion for summary judgment is affirmed.
Judgment affirmed in part, reversed, in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal. We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into *Page 17 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to all parties equally.
CARR, J. WHITMORE, J. CONCURS