DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant/cross-appellee, Fein Designs Co., LTD., LLC ("Fein Designs"), appeals the judgment of the Summit County Court of Common Pleas, which directed a verdict against Fein Designs in regard to the complaint of appellees/cross-appellants, Nelson Jewellery Arts Co., LTD. ("Nelson Hong Kong") and Nelson Jewellery, Inc. ("Nelson USA"). Nelson Hong Kong and Nelson USA appeal the judgment of the Summit County Court of Common Pleas, which confirmed a jury verdict in favor of Fein Designs on its counterclaims against Nelson Hong Kong. This Court affirms. *Page 2 
 I. {¶ 2} The parties first filed appeals and cross-appeals in this matter in June, 2005. This Court dismissed Nelson Hong Kong's first assignment of error on cross-appeal as having been untimely filed and dismissed the remaining issues on appeal for lack of a final, appealable order on May 10, 2006. Nelson Jewellery Arts Co., Ltd. v. Fein Designs Co., Ltd.,L.L.C, 9th Dist. No. 22738, 2006-Ohio-2276. This Court found that Fein Designs' counterclaims against Nelson Hong Kong had not been disposed, because the trial court entered judgment in favor of Fein Designs as against Nelson USA, against which no claims were pending.
 {¶ 3} After this Court dismissed the appeal and cross-appeal, the trial court issued a nunc pro tunc judgment on the jury verdict upon joint motion of the parties. The March 5, 2007 judgment stated that the jury had rendered a verdict against Nelson Hong Kong on Fein Designs' counterclaims, thereby disposing of all pending claims.
 {¶ 4} This Court here reiterates the procedural history of this matter.
 {¶ 5} On February 14, 2003, Nelson Hong Kong filed a complaint against Fein Designs, alleging four counts, to wit: money due, breach of contract, account, and unjust enrichment. On March 27, 2003, Fein Designs filed an answer and counterclaims against Nelson Hong Kong, alleging five counts, to wit: fraud, breach of contract, misappropriation of confidential/proprietary information, tortious interference, and unfair competition/unfair trade practices. Fein Designs *Page 3 
alleged as a defense that Nelson Hong Kong lacked the capacity to maintain the action. On September 15, 2003, Fein Designs filed a trial brief in which it argued that Nelson Hong Kong lacked the capacity to maintain its action and was, therefore, barred from recovering any judgment pursuant to R.C. 1703.29, because Nelson Hong Kong was not licensed to do business in Ohio.
 {¶ 6} The matter proceeded to trial on September 15, 2003. At the conclusion of Nelson Hong Kong's case-in-chief, the trial court took the issue of Nelson Hong Kong's lack of capacity under advisement. The trial court informed the parties that it would further review the applicable case law and notify counsel the next day regarding whether the matter would proceed. On September 17, 2003, the trial court issued a judgment order in which it found that Nelson Hong Kong had a resident agent in Ohio, had conducted business in Ohio, and should, therefore, have been registered to do business in the state of Ohio. Accordingly, the trial court granted Fein Designs' motion to dismiss Nelson Hong Kong's complaint on the basis of Nelson Hong Kong's lack of capacity. The trial court further found that Fein Designs' counterclaims were "so intertwined in the purported contract between the Plaintiff and the Defendant that the counts of the Counterclaim cannot stand alone[.]" Accordingly, the trial court dismissed Fein Designs' counterclaims in full.
 {¶ 7} In a subsequent motion for relief from judgment pursuant to Civ.R. 60(B), Fein Designs recognized the trial court's action as the granting of a directed *Page 4 
verdict. As a directed verdict operates as a judgment upon the merits, and all pending claims were disposed by the trial court's September 17, 2003 order, that order dismissing the complaint and counterclaims was a final, appealable order.
 {¶ 8} On September 18, 2003, after the trial court's dismissal of the entire action, Fein Designs filed a supplemental trial brief in which it argued that its counterclaims should be permitted to proceed to trial. On September 19, 2003, the trial court issued another judgment order in which it found that "it may have made an error in not allowing some of the counterclaims to stand alone and proceed[.]" The trial court then ordered the parties to appear on September 30, 2003, "as the Court will reconsider that Order as to the counterclaims of the Defendant." Fein Designs moved on October 15, 2003, for the trial court to amend its September 19, 2003 order nunc pro tunc to reflect that the order was made under Civ.R. 60(B). The trial court granted the motion and amended nunc pro tunc its September 19, 2003 order, which merely asserted that it may have erred in dismissing the counterclaims and ordering the parties' appearance for the trial court's reconsideration, to indicate that that order was made pursuant to Civ.R. 60(B).
 {¶ 9} On September 25, 2003, Fein Designs filed a motion for relief from judgment pursuant to Civ.R. 60(B) in regard to the trial court's September 17, 2003 order, seeking reinstatement of its counterclaims. On September 29, 2003, Nelson Hong Kong filed a memorandum in opposition to Fein Designs' Civ.R. *Page 5 
60(B) motion, as well as a motion to strike Fein Designs' September 19, 2003 supplemental trial brief as an improper post-judgment motion.
 {¶ 10} On October 3, 2003, the trial court issued a judgment order upon Fein Designs' post-judgment supplemental trial brief. The trial court, upon reconsideration of its September 17, 2003 judgment order, reinstated Fein Designs' "counterclaim"[1] and ordered that Nelson Hong Kong could refile its complaint if it became licensed to do business in Ohio prior to the rescheduled trial date of March 1, 2004.
 {¶ 11} Although the trial court's order reinstating Fein Designs' counterclaims did not reference the motion for relief from judgment, Fein Designs' Civ.R. 60(B) motion was pending prior to the trial court's October 3, 2003 order. Furthermore, both Fein Designs' supplemental trial brief and motion for relief from judgment requested the same relief, i.e., the reinstatement of the counterclaims. Accordingly, the trial court's October 3, 2003 order effectively served as an order granting Fein Designs' motion for relief from judgment of the September 17, 2003 order dismissing the entire action. Because a Civ.R. 60(B) motion for relief from judgment is a proper post-judgment motion, the trial court's order granting the relief requested in such a motion constitutes a valid post-judgment *Page 6 
ruling.[2] Accordingly, Fein Designs' claims against Nelson Hong Kong were validly reinstated.
 {¶ 12} On October 24, 2003, Nelson USA filed a motion to intervene, asserting that it was licensed to do business in Ohio and that Nelson Hong Kong had assigned its interests in its earlier asserted claims against Fein Designs to it. The trial court granted the motion to intervene. On October 28, 2003, Nelson Hong Kong and Nelson USA jointly filed an amended complaint, alleging four counts, to wit: money due, breach of contract, account and unjust enrichment, all premised upon Nelson Hong Kong's assignment of rights to Nelson USA. Fein Designs filed an answer, asserting in part that Nelson Hong Kong's claims were dismissed, leaving Fein Designs' reinstated counterclaims, in effect, as the pending complaint. Accordingly, Fein Designs asserted that Nelson USA could only assert its claims as counterclaims.
 {¶ 13} The parties engaged in extensive discovery efforts, and the trial court conducted a trial on the matter beginning on May 5, 2005. At the conclusion of Nelson USA's case-in-chief, the trial court directed a verdict in favor of Nelson USA on its claims against Fein Designs in the amount of $52,671.27, plus interest. *Page 7 
At the conclusion of trial, the jury rendered a verdict in favor of Fein Designs on its "counterclaim"[3] against Nelson USA.
 {¶ 14} On May 12, 2005, the trial court issued a judgment on the jury verdict, wherein it confirmed the jury's verdict in favor of Fein Designs on its remaining counterclaim "as against the Plaintiff, Nelson Jewellery (USA), INC." and reiterated its directed verdict in favor of Nelson USA on its claims. On May 16, 2005, Nelson Hong Kong and Nelson USA filed a joint motion for a judgment notwithstanding the verdict regarding the damages awarded to Fein Designs on its counterclaim for breach of contract. Fein Designs filed its memorandum in opposition on May 31, 2005, and the Nelson entities replied on June 3, 2005. On June 6, 2005, the trial court issued a judgment order wherein it found the joint motion for judgment notwithstanding the verdict to be untimely filed, and it declined to hear the motion. The trial court based its decision on the erroneous finding that the Nelson entities filed their motion for judgment notwithstanding the verdict regarding the May 12, 2005 judgment on June 2, 2005. The Nelson entities filed a motion for reconsideration of the June 6, 2005 judgment order. The trial court ignored the motion for reconsideration.
 {¶ 15} On May 16, 2005, Nelson Hong Kong and Nelson USA also filed a joint motion for an order nunc pro tunc clarifying the jury verdict and judgment, *Page 8 
for the reason that judgment was entered in favor of Fein Designs on its counterclaim for breach of contract against Nelson USA instead of against Nelson Hong Kong. The trial court failed to issue a ruling on this motion at the time.
 {¶ 16} Fein Designs appealed and the Nelson entities cross-appealed. This Court dismissed the appeal and cross-appeal as explained above.
 {¶ 17} On August 31, 2006, the parties filed a joint motion for an order nunc pro tunc to "correct" the May 12, 2005 judgment on the jury verdict to reflect that "Fein Designs' counterclaim was asserted, pled, and submitted to the jury as against Nelson Hong Kong, not Nelson U.S.A." The trial court signed the parties' proposed nunc pro tunc judgment on the jury verdict, which is identical to the May 12, 2005 judgment, except that it states that the jury rendered its verdict on Fein Designs' counterclaim as against Nelson Hong Kong.
 {¶ 18} At the conclusion of the trial which began on May 5, 2005, the trial court instructed the jury that "You will consider the counterclaim of the defendant, Fein Designs Company Limited, against Nelson Jewellery USA, that allege[s] that there was a subsequent agreement between the parties, that upon certain payment to be made from Fein Designs Company to Nelson Jewellery, they would continue to ship orders made by the defendant, Fein Designs Company Limited or to Fein Designs Company Limited." Clearly, as Fein Designs' counterclaims were submitted to the jury as being against Nelson USA, the March 5, 2007 nunc pro tunc judgment on the jury verdict does not reflect the jury's true judgment in this *Page 9 
case. In addition, the May 10, 2005 verdict form signed by the eight members of the jury states that they found in favor of Fein Designs on its counterclaim against Nelson USA. However, all parties agreed to the issuance of the March 5, 2007 judgment and this Court therefore will not discuss the propriety of an order nunc pro tunc under these circumstances.
 {¶ 19} Fein Designs again appeals, setting forth the same four assignments of error for review, as it raised in the first appeal. Nelson Hong Kong and Nelson USA again cross-appeal, setting forth the same three cross-assignments of error, as they raised in the first cross-appeal. Some assignments of error are consolidated for ease of review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ENTERING A DIRECTED VERDICT AGAINST FEIN DESIGNS ON ITS COUNTERCLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACT[.]"
 ASSIGNMENT OF ERROR II "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ENTERING A DIRECTED VERDICT AGAINST FEIN DESIGNS ON ITS COUNTERCLAIM FOR MISAPPROPRIATION OF PROPRIETARY INFORMATION[.]"
 {¶ 20} Fein Designs argues that the trial court erred by directing a verdict against it on its counterclaims for tortious interference with contract and misappropriation of proprietary information. This Court disagrees. *Page 10 
 {¶ 21} Civ.R. 50(A) permits a party to move for a directed verdict at the close of the opponent's evidence. This Court has stated:
 "In ruling on a directed verdict-or, in our case, considering such a ruling on appeal-a court must construe the evidence most strongly in favor of the non-moving party and determine whether reasonable minds can come to but one conclusion on the evidence submitted, that conclusion being adverse to the non-moving party. If reasonable minds can reach different conclusions, the matter must be submitted to a jury. The court considers the motion without weighing the evidence or determining the credibility of witnesses. A motion for a directed verdict raises a question of law because it examines the materiality of the evidence rather than the conclusions to be drawn from the evidence. Thus, the court does not determine whether one version of the facts presented is more persuasive than another; rather, it determines whether only one result can be reached under the theories of law presented in the complaint." Clair v. First Am. Title Ins., 9th Dist. No. 23382, 2007-Ohio-1681, at ¶ 5, quoting Cox v. Oliver Mach. Co. (1987), 41 Ohio App.3d 28, 29.
Accordingly, this Court reviews the trial court's decision to grant or deny a motion for directed verdict de novo. Clair at ¶ 5, citingNichols v. Hanzel (1996), 110 Ohio App.3d 591, 599.
Tortious interference with contract {¶ 22} To prevail on a claim for tortious interference with contract, Fein Designs must be able to establish the following:
 "(1) the existence of a contract,
 "(2) the wrongdoer's knowledge of the contract,
 "(3) the wrongdoer's intentional procurement of the contract's breach,
 "(4) lack of justification, and *Page 11 
 "(5) resulting damages. Kenty v. Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415, 419.
 "In determining whether an actor has acted improperly in interfering with a contract or prospective contract of another, consideration should be given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. (Restatement of the Law 2d, Torts (1979), Section 767, adopted.)" (Paragraph breaks added.) Fred Siegel Co., L.P.A. v. Arter Hadden (1999), 85 Ohio St.3d 171, paragraphs one and three of the syllabus.
 {¶ 23} Fein Designs alleged in its counterclaim that Nelson interfered with the contract between itself and its former employee, Bryon Macron, by inducing Mr. Macron to compete with Fein Designs and to misappropriate Fein Designs' proprietary or confidential information. On appeal, Fein Designs argues that Nelson intentionally interfered with its general contract with Bryon Macron that Mr. Macron not disclose proprietary information (the untitled confidentiality agreement); its more detailed contract with Bryon Macron that he not use or disclose any proprietary information and that he not compete with Fein Designs (the "Agreement with Employee regarding Proprietary Information, Discoveries and Limited Noncompetition); and its business relationship with K's Merchandise.
 {¶ 24} This Court agrees with Nelson's assertion that Fein Designs attempts to raise a new cause of action, to wit: interference with business relationships, for *Page 12 
the first time on appeal. Fein Designs "cannot change the theory of [its] case and present [this] new argument for the first time on appeal. State ex rel. Gutierrez v. Trumball Cty. Bd. of Elections (1992)65 Ohio St.3d 175, 177. Accordingly, this Court does not here consider Fein Designs' arguments regarding an intentional interference with business relationships claim.
 {¶ 25} In regard to the allegation that Nelson induced Mr. Macron to misappropriate Fein Designs' proprietary information, the evidence indicates that Nelson was aware that Mr. Macron had a confidentiality agreement with Fein Designs. Kenneth Wilson, senior vice president of sales and merchandising for Nelson USA, testified that he interviewed Mr. Macron for a sales position with Nelson and that Mr. Macron told him he was bound by a confidentiality agreement with Fein Designs. Mr. Macron testified that he informed Mr. Wilson of the existence of a confidentiality agreement and that Mr. Wilson asked to see it. Mr. Macron never produced the agreement for Mr. Wilson's review because he lost his copy. Mr. Macron testified, however, that he declined to answer one question posed by Mr. Wilson during the employment interview because he believed he would have violated the agreement by doing so.
 {¶ 26} Mr. Wilson testified that while some aspects of pricing, styles and customers may be proprietary, much of that information is readily available in the public domain. Specifically, he testified that the first place one could identify jewelry wholesalers and retailers is in a phone book. He further testified regarding *Page 13 
trade publications and industry journals, which identify customers, addresses, phone numbers, key executives, head buyers and credit ratings. Mr. Wilson expressly testified that Mr. Macron never disclosed any information to him regarding Fein Designs' customers. He added that he would not even want such information, because Fein Designs and Nelson target different types of customers. Mr. Wilson further testified that it is Nelson's business policy not to pursue any of its customers' customers to sell them the same or similar products.
 {¶ 27} Mr. Macron testified that, when he left Fein Designs after five years, he "took nothing from the table." He testified that he has always abided by the terms of his confidentiality agreement. He further testified that Mr. Wilson never asked him about any customers he had called on while working for Fein Designs.
 {¶ 28} Mark Frank, controller and chief financial officer of Fein Designs, testified that he has no evidence that Mr. Macron utilized any confidential or proprietary information belonging to Fein Designs in regard to his work with Nelson.
 {¶ 29} Linda Feinstein, vice president of Fein Designs, testified that she believes that Mr. Macron must have used Fein Designs' proprietary information while at Nelson, only because Mr. Macron worked on the K's Merchandise account while at both Fein Designs and Nelson. She testified that, once Mr. Macron left Fein Designs, the company was not able to do any more business with K's. *Page 14 
 {¶ 30} Based on a thorough review of the record, this Court finds that there is no evidence to support a finding that Nelson did anything to intentionally procure a breach of Mr. Macron's confidentiality agreement with Fein Designs. No one at Fein Designs could point to any use by Mr. Macron of Fein Designs' proprietary information in regard to his work for Nelson on the K's Merchandise account. Mrs. Feinstein merely speculated that he must have used such confidential information only because he called on K's for both Fein Designs and Nelson. Both Mr. Wilson and Mr. Macron testified that Nelson's business interests in customers were distinct from those of Fein Designs. Both further testified that Mr. Macron did not use any proprietary information belonging to Fein Designs in regard to his work for Nelson.
 {¶ 31} As Fein Designs failed to present any evidence that Nelson intentionally procured a breach of Mr. Macron's confidentiality agreement with Fein Designs, reasonable minds could reach only one conclusion, specifically that Nelson did not tortiously interfere with that contract. Accordingly, the trial court did not err by granting directed verdict on Fein Designs' counterclaim for tortious interference in regard to the confidentiality agreement.
 {¶ 32} In regard to the allegation that Nelson induced Mr. Macron to compete with Fein Designs, the evidence indicates that Nelson was not aware of any non-competition agreement between Fein Designs and Macron. *Page 15 
 {¶ 33} Mr. Macron testified that he did not remember signing a noncompetition agreement while at Fein Designs. He further testified that he did not tell anyone at Nelson that he was restricted by any such agreement. Mr. Macron also testified that he saw the Feinsteins at a trade show soon after he began working for Nelson and that they did not mention to him that he was prohibited from working for a competitor due to any non-competition agreement.
 {¶ 34} Mr. Wilson testified that he does not as a matter of standard practice ask prospective employees about non-competition restrictions. He testified that he did not ask Mr. Macron whether he was so restricted, and Mr. Macron did not tell him that he was. Mr. Wilson testified that he told Mr. Macron about Nelson's company policy that it would not do business with its customers' customers with regard to like products. Mr. Wilson also testified that no one from Fein Designs told him that Mr. Macron was prohibited from working for a competitor due to any non-competition agreement.
 {¶ 35} Martin Feinstein, owner of Fein Designs, testified that he remembers signing Mr. Macron's non-competition agreement and that Macron had already signed it. However, Fein Designs could not produce a copy of the signed agreement. In fact, Mr. Feinstein testified that when he looked for the agreement in Mr. Macron's file after Macron resigned, the agreement was not there. Mr. Feinstein admitted at trial that Nelson was not a party to the non-competition agreement, and Mr. Macron is not a party to this lawsuit. He further admitted that *Page 16 
he did not know whether anyone at Nelson knew that there was any kind of noncompetition agreement between Mr. Macron and Fein Designs. In fact, he testified that he had no evidence that anyone at Nelson was aware of any such agreement. Mr. Feinstein also admitted that, after Mr. Macron left Fein Designs' employ, nobody at Fein Designs called on any customers earlier serviced by Mr. Macron "for a long time."
 {¶ 36} While Mr. Frank testified that he had Mr. Macron sign a noncompetition agreement when he began working for Fein Designs, he admitted that there was no signed non-competition agreement in Macron's file. Mr. Frank further testified that he never contacted Mr. Macron after he left Fein Designs' employ to remind him that he was bound by a non-competition agreement. He also admitted that no one from Fein Designs informed anyone at Nelson that Mr. Macron was restricted by a non-competition agreement once they learned that Macron was working for Nelson.
 {¶ 37} Finally, Mrs. Feinstein testified that she did not notify anyone at Nelson that Mr. Macron was restricted by a non-competition agreement.
 {¶ 38} Based on a thorough review of the record, even assuming that Mr. Macron in fact signed a non-competition agreement with Fein Designs, there is no evidence that Nelson was aware of the existence of any such agreement when it hired Mr. Macron. Further, Nelson's company policy was to refuse to compete with its own customers by selling the same or similar products to mutual *Page 17 
customers. There was no evidence to show that Nelson disregarded this policy in regard to its K's Merchandise account. Therefore, there is no evidence to show that Nelson procured any breach of the alleged non-competition agreement between Mr. Macron and Fein Designs. Accordingly, the trial court did not err by granting directed verdict on Fein Designs' counterclaim for tortious interference in regard to the non-competition agreement.
Misappropriation of proprietary information {¶ 39} "Information which is confidential or proprietary to a particular business is protected by statutory provisions prohibiting the misappropriation of trade secrets." John Deere Ins. Co. v. Ricker (Aug. 21, 1997), 10th Dist. No. 96APE10-1426. Such confidential and proprietary information includes business and financial information that satisfies both of the following conditions:
 "(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
 "(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." R.C. 1333.61(D).
 {¶ 40} While Mr. Frank testified that Fein Designs considers certain information like pricing, styles and customer identification to be proprietary, he admitted that Fein Designs does not tell its customers not to discuss such information with competitor suppliers who ask. Mr. Frank further testified that Fein Designs does not stamp invoices as confidential. He agreed that jewelry *Page 18 
styles are on display in customers' stores for "the whole world to see." Mr. Frank also testified that Fein Designs does not tell its customers not to disclose that Fein Designs is their supplier.
 {¶ 41} While Mr. Wilson testified that certain aspects of pricing, styles and customers may be proprietary, he testified that much information is readily available from public sources like telephone books and trade publications.
 {¶ 42} Mrs. Feinstein admitted at trial that Fein Designs does not instruct its customers not to disclose information regarding pricing, styles or their identity as Fein Designs' customers to competitors. She also admitted that a supplier can readily identify potential customers by reading industry publications, perusing telephone books and by attending trade shows.
 {¶ 43} A thorough review of the record indicates that Fein Designs failed to identify as proprietary any information which was not readily ascertainable by reasonable means. The evidence further indicates that Fein Designs identified no measures it took to maintain the secrecy of information it believed to be confidential. Under these circumstances, reasonable minds could come to only one conclusion, that being that Nelson did not misappropriate confidential and proprietary information belonging to Fein Designs. Accordingly, the trial court did not err by granting a directed verdict against Fein Designs on its counterclaim for misappropriation of proprietary information.
 {¶ 44} Fein Designs' first and second assignments of error are overruled. *Page 19 
 ASSIGNMENT OF ERROR III "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN PERMITTING NELSON JEWELLERY TO CURE ITS FAILURE TO OBTAIN THE REQUISITE LICENSE TO DO BUSINESS IN OHIO DURING THE PENDENCY OF THIS ACTION[.]"
 {¶ 45} Fein Designs argues that the trial court erred by permitting Nelson Hong Kong to cure its failure to obtain a license to do business in Ohio during the pendency of this action. This Court disagrees.
 {¶ 46} Fein Designs argues that Nelson Hong Kong could not maintain an action against it based on the restriction set forth in R.C. 1703.29. R.C. 1703.29(A) provides that any foreign corporation which has failed to obtain a license to do business in Ohio may not maintain any legal action until it has obtained such license.
 {¶ 47} In this case, the trial court properly dismissed Nelson Hong Kong's claims against Fein Designs on the grounds of lack of capacity because Nelson Hong Kong was not licensed to do business in Ohio. Nelson Hong Kong then assigned its accounts receivable from Fein Designs to Nelson USA. Nelson USA moved and was granted leave to intervene in the pending action. Nelson USA then filed a complaint against Fein Designs, seeking relief for money due, breach of contract, judgment on account and unjust enrichment. Nelson Hong Kong maintained no action against Fein Designs.
 {¶ 48} This is not the case where Nelson Hong Kong "cured" its lack of capacity and continued to maintain its action. Nelson Hong Kong had no pending *Page 20 
claims against Fein Designs in this action. Fein Designs did not challenge the validity of Nelson Hong Kong's assignment to Nelson USA of accounts receivable. Significantly, Fein Designs did not oppose Nelson USA's intervention in the case. Therefore, it was Nelson USA's claims against Fein Designs which were properly before the trial court for resolution. As the trial court did not permit Nelson Hong Kong to circumvent the restriction on maintaining an action in the absence of proper licensing pursuant to R.C. 1703.29(A), Fein Designs' third assignment of error is without merit and overruled.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN AWARDING PREJUDGMENT INTEREST ON THE FULL AMOUNT OF THE CONTRACTUAL AWARD AGAINST FEIN DESIGNS WHILE AWARDING NO PREJUDGMENT INTEREST ON THE AMOUNT OF THE JURY AWARD FOR FEIN DESIGNS' OWN CONTRACTUAL DAMAGES[.]"
 {¶ 49} Fein Designs first argues that the trial court erred by failing to award prejudgment interest on the amount of the jury award in its favor on its breach of contract claim against Nelson Hong Kong. Fein Designs next argues that the trial court erred by awarding prejudgment interest to Nelson USA on its entire $52,671.27 judgment because Fein Designs was entitled to set off its own judgment of $32,000.00 against the judgment it owed to Nelson Hong Kong. This Court disagrees.
 {¶ 50} The trial court awarded prejudgment interest to Nelson USA on its judgment award of $52,671.27, arriving at a preliminary judgment in favor of *Page 21 
Nelson USA against Fein Designs in the amount of $62,020.54. The trial court granted judgment against Nelson Hong Kong in favor of Fein Designs in the amount of $32,000.00, plus interest from the date of judgment. The trial court then set off the amount of the judgment owed by Fein Designs to Nelson USA by the amount of the judgment owed by Nelson Hong Kong to Fein Designs, and entered judgment in favor of Nelson USA against Fein Designs in the amount of $30,020.54, plus post-judgment interest.
Prejudgment interest {¶ 51} A party is not entitled to prejudgment interest when "the record is devoid of any evidence as to how to calculate the prejudgment interest and on what amount." Carter v. New Buckeye Redev. Corp. (Sept. 7, 2000), 8th Dist. No. 76682.
 {¶ 52} In this case, Fein Designs presented evidence regarding its damages for costs, which included damages regarding travel costs to India, payroll overtime costs, lost opportunity costs, and the cost for the expedited creation of model jewelry pieces. Those costs were assumed at different times. Fein Designs submitted no dated invoices or billing statements in support of its damages. Rather, it submitted a summary description of damages without reference to any dates on which such costs were incurred. Because Fein Designs failed to present evidence to show when the right to interest accrued, the trial court did not err by *Page 22 
failing to award prejudgment interest to Fein Designs as part of its contractual damages.
Set-off {¶ 53} Fein Designs argues that the trial court erred by awarding prejudgment interest to Nelson USA on the entire account balance of $52,671.27 which was awarded. Fein Designs reasoned that it did not owe Nelson USA the entire account balance because it was entitled to set off the judgment of $32,000.00 entered in its favor against Nelson Hong Kong.
 {¶ 54} "`A set-off, whether legal or equitable, must relate to cross-demands on the same right, and when there is mutuality of obligations.'" Witham v. South Side Bldg. Loan Assn. of Lima,Ohio (1938), 133 Ohio St. 560, 562, quoting Andrews v. State ex rel.Blair, Supt. Of Banks (1931), 124 Ohio St. 348, paragraph five of the syllabus. "It is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to setoff their respective debts by way of mutual deduction."Witham, 133 Ohio St. at 560.
 {¶ 55} In this case, Fein Designs owes a judgment amount to Nelson USA on Nelson USA's complaint for money due on account, while Nelson Hong Kong owes a judgment amount to Fein Designs on Fein Designs' separate and distinct claim for breach of contract. Accordingly, there is no mutuality of parties to allow for a set off of judgments. Moreover, the account on which Fein Designs owes Nelson USA is a separate and distinct obligation from Nelson Hong Kong's *Page 23 
obligation to ship confirmed orders at the agreed-upon price. Accordingly, there is no mutuality of obligations. Therefore, as Fein Designs is not entitled to set off the $52,671.27 judgment it owes to Nelson USA against the $32,000.00 judgment that Nelson Hong Kong owes to Fein Designs, the trial court did not err by awarding prejudgment interest on the entire $52,671.27 judgment.
 {¶ 56} Fein Designs' fourth assignment of error is overruled.
 CROSS-ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED BY DISMISSING THE COMPLAINT OF CROSS-APPELLANT NELSON JEWELLERY ARTS CO., LTD. ON THE BASIS OF LACK OF CAPACITY."
 {¶ 57} In their first cross-assignment of error, the Nelson entities argue that the trial court erred by dismissing Nelson Hong Kong's complaint by order dated September 17, 2003, on the basis of lack of capacity. This Court disagrees.
 {¶ 58} The Supreme Court of Ohio has held that the doctrine of the law of the case stands for the proposition that "[t]he decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Nolan v. Nolan (1984), 11 Ohio St.3d 1,3-4. See, also, McDowell v. DeCarlo, 9th Dist. No. 23376,2007-Ohio-1262, at ¶ 11.
 {¶ 59} In our prior decision, this Court has already found that the trial court's September 17, 2003 order in which it dismissed Nelson Hong Kong's complaint was a final, appealable order. Nelson Jewellery ArtsCo., Ltd. at ¶ 5. *Page 24 
Nelson Hong Kong did not file a motion for relief from judgment from that order. Because Nelson Hong Kong did not file its notice of cross-appeal until June 20, 2005, we dismissed its cross-appeal regarding its first assignment of error as untimely. Id. at ¶ 18. Nelson Hong Kong here again raises the same argument in its first assignment of error. Accordingly, the renewed first assignment of error is overruled pursuant to the law of the case doctrine.
 CROSS-ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED BY ENTERING JUDGMENT ON THE JURY'S VERDICT AWARDING CROSS-APPELLEE FEIN DESIGNS CO., LTD., LLC. DAMAGES ON ITS COUNTERCLAIM FOR BREACH OF CONTRACT."
 {¶ 60} Nelson Hong Kong argues that the trial court erred by entering judgment on the jury's verdict awarding damages to Fein Designs on its counterclaim for breach of contract. Specifically, Nelson Hong Kong argues that the jury's verdict granting judgment in favor of Fein Designs is against the manifest weight of the evidence. In addition, Nelson Hong Kong argues that the jury's verdict awarding both expectancy and restitutionary damages was improper as a matter of law. This Court disagrees.
Manifest weight
 {¶ 61} The Ohio Supreme Court recently stated that the civil manifest weight of the evidence standard was enunciated in CE. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus, which held that "[judgments supported by some competent, credible evidence going to all the essential *Page 25 
elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 24. Further,
 "when reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81. This presumption arises because the [trier of fact] had an opportunity `to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' Id. at 80. `A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.' Id. at 81." Id.
 {¶ 62} To prevail on its claim for breach of contract, Fein Designs had to prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff."Kunkle v. Akron Mgt. Corp., 9th Dist. No. 22511, 2005-Ohio-5185, at ¶ 18, quoting Doner v. Snapp (1994), 98 Ohio App.3d 597, 600. The necessary elements of a valid contract include "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object of consideration." Kostelnik v. Helper, 96 Ohio St.3d 1,2002-Ohio-2985, at ¶ 16.
 {¶ 63} Nelson Hong Kong notified Fein Designs that it would no longer do business with Fein Designs because the importer had failed to pay for some of its jewelry shipments. Fein Designs alleged that it and Nelson Hong Kong entered *Page 26 
into an oral agreement, whereby Nelson Hong Kong would ship goods which had been ordered and/or confirmed for shipment upon receipt of specific payments. Fein Designs alleged that Nelson Hong Kong breached the agreement by failing to ship those goods upon receipt of the specific payment, and that Fein Designs suffered damages as a result of the breach.
 {¶ 64} A series of emails between Nelson Hong Kong and Fein Designs was admitted into evidence. On June 27, 2002, Martin Lo, chief financial officer of Nelson Hong Kong at the time relevant to this matter, sent an email to Mr. Feinstein, advising him that Nelson Hong Kong would not deliver any confirmed order or process any unconfirmed order because of company policy to hold shipment for long outstanding overdue accounts. Mr. Lo further directed Fein Designs to advise when it would send payment for past due amounts, as well as $20,799.77 for consignment stock.
 {¶ 65} Mr. Lo and Martin Ho, owner of Nelson Hong Kong, testified that it required Fein Designs to pay 50% for all shipments upon receipt, and the remaining 50% within 30 days. Mr. Feinstein and Mr. Frank of Fein Designs did not dispute these payment terms. Messrs. Lo and Ho testified that the jewelry samples sent to Fein Designs in 1994, which Fein Designs used to solicit orders, were subject to the same payment requirements. They both testified that Nelson Hong Kong had repeatedly requested that Fein Designs pay for the samples over the years. Messrs. Feinstein and Frank, however, testified that the samples had *Page 27 
been sent on consignment and that Fein Designs was required to pay Nelson Hong Kong only upon the sale of any specific sample to a customer. Mr. Feinstein testified that no one at Nelson Hong Kong had demanded payment for the samples prior to Mr. Lo's June 27, 2002 email.
 {¶ 66} On or about June 27, 2002, Mr. Feinstein sent an email to Mr. Lo, expressing his surprise at Nelson Hong Kong's position regarding confirmed and unconfirmed orders. Mr. Feinstein asked Nelson Hong Kong to reconsider its position. He further proposed a payment schedule for overdue amounts, predicated on Nelson's resuming a normal shipping schedule. Mr. Lo responded by email on June 28, 2002, stating that he would like "the long overdue consignment amount of US$ 20,799.00 before the end of the next week ending Jul 6,02., in addition to your proposal below before we can process any further on your outstanding orders."
 {¶ 67} Mr. Frank emailed Mr. Lo soon thereafter and advised that he would initiate a wire transfer of money in an amount to cover "the outstanding consignment, invoices over 60 days, and any first half payments entered into our system at that time." Mr. Frank further stated that "[w]e understand that you will not resume shipping until receipt of the wire transfer." Mr. Frank wired $29,974.56 to Nelson Hong Kong on July 1, 2002 to cover the above-referenced *Page 28 
amounts.[4] Mr. Frank testified that he also called Mr. Lo to confirm receipt of the wire transfer and to make sure that both parties understood the nature of the agreement. Mr. Frank testified that he understood that Nelson Hong Kong would confirm orders that were placed and ship orders that were already confirmed upon receipt of that initial transfer of money. He testified that Mr. Lo confirmed his understanding during their telephone conversation.
 {¶ 68} On July 2, 2002, Mr. Frank sent a letter by facsimile to Mr. Lo requesting that Nelson Hong Kong confirm orders received and begin manufacturing of the merchandise ordered. Also on July 2, 2002, Mr. Frank sent an email to Mr. Lo referencing their telephone conversation. Mr. Frank wrote, "Based on that conversation, it is my understanding that on July 3, 2002, we will receive confirmation of orders placed (for which confirmation was being held). I also understand that shipments will resume."
 {¶ 69} On July 4, 2002, Mr. Lo emailed Mr. Frank to confirm receipt of the $29,974.56, but he further questioned whether Nelson Hong Kong should begin charging Fein Designs pursuant to a retail pricing structure rather than a wholesale pricing structure. Then on July 14, 2002, Mr. Lo emailed Mr. Frank to inform him that certain orders were ready to ship. He asserted, however, that those shipments would not be released until Fein Designs had settled its account with Nelson Hong *Page 29 
Kong in full. Mr. Frank testified that Fein Designs did not send any more money because he believed that Nelson Hong Kong would not honor its commitment to ship orders. Mr. Feinstein testified that Fein Designs contracted with a manufacturer in India to expeditiously fill the orders that it believed that Nelson Hong Kong would not ship, thereby suffering damages.
 {¶ 70} Although there was some conflicting evidence in this case, this Court will not disturb the jury's factual determinations because the jury is in the best position to determine the credibility of the witnesses during trial. State v. Crowe, 9th Dist. No. 04CA0098-M,2005-Ohio-4082, at ¶ 22. In addition, this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the jury chose to believe certain witness' testimony over the testimony of others. Id.
 {¶ 71} A thorough review of the record compels this Court to find no indication that the jury lost its way and committed a manifest miscarriage of justice by finding that Nelson Hong Kong breached its oral agreement with Fein Designs to ship goods upon receipt of specific payments. Mr. Feinstein and Mr. Frank both testified that Fein Designs was not obligated to pay for the samples on consignment until after they had been sold. They testified that Fein Designs could have merely returned the samples for credit. Accordingly, there was evidence of consideration. Mr. Frank further testified that Nelson Hong Kong had agreed to *Page 30 
resume shipments of confirmed orders and accept new orders upon receipt of the initial payment of $29,974.56, not upon receipt of all past due amounts. There is no dispute that Fein Designs paid $29,974.56 and that Nelson Hong Kong received it. Instead of shipping confirmed orders, however, Mr. Lo inquired about the need to modify the pricing structure relevant to Fein Designs' orders. Mr. Lo further asserted that the goods which were ready for shipment would be held until all past due amounts were received. There is competent, credible evidence to support a finding that Fein Designs reasonably believed that Nelson Hong Kong would not honor its agreement. Mr. Feinstein testified regarding the damages suffered by Fein Designs in covering its pending orders with customers. Accordingly, this Court finds that the jury's verdict against Nelson Hong Kong on Fein Designs' counterclaim for breach of contract is not against the manifest weight of the evidence.
Damages {¶ 72} Nelson Hong Kong argues that, assuming the jury's verdict is not against the manifest weight of the evidence, the jury's damages award was improper as a matter of law. Specifically, Nelson Hong Kong argues that the jury improperly awarded Fein Designs both expectancy and restitutionary damages. This Court disagrees.
 {¶ 73} The Ohio Supreme Court has held:
 "In Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is *Page 31 
not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive." (Emphasis omitted.) Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 655.
 {¶ 74} The jury rendered its verdict in favor of Fein Designs by way of a general verdict without interrogatories. Nelson Hong Kong did not test the general verdict by interrogatories. See Jenkins v. Pertz (Jan. 11, 1984), 9th Dist. No. 11130. Accordingly, Nelson Hong Kong's assertion that the jury awarded both expectancy and restitutionary damages is mere speculation, as no interrogatories were submitted which might support Nelson's assertions on appeal. See Moscioni v. Ryan (Dec. 30, 1983), 6th Dist. No. E-83-31.
 {¶ 75} Furthermore, the trial court instructed the jury that if it found that Nelson Hong Kong breached a contract with Fein Designs, then Fein Designs "has the right to be placed in the position in which it would have been if the contract had been fully performed." "A presumption always exists that the jury has followed the instructions given to it by the trial court." Pang v. Minch (1990),53 Ohio St.3d 186, 187, citing State v. Fox (1938), 133 Ohio St. 154, 160. Therefore, this Court must presume that the jury followed the trial court's instruction to award only expectancy damages in relation to Nelson Hong Kong's breach of contract.
 {¶ 76} Nelson Hong Kong's second cross-assignment of error is overruled. *Page 32 
 CROSS-ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED BY DENYING CROSS-APPELLANTS NELSON JEWELLERY ARTS CO., LTD. AND NELSON JEWELLERY (U.S.A.) INC.'S MOTION FOR AN ORDER NUNC PRO TUNC."
 {¶ 77} Nelson USA first argues that the trial court erred by reducing the amount of its judgment against Fein Designs by the amount of the judgment awarded to Fein Designs against Nelson Hong Kong. Nelson USA further argues that the trial court erred in its computation of prejudgment interest. This Court disagrees.
 {¶ 78} After the trial court journalized its final judgment, the Nelson entities filed a "motion for an order nunc pro tunc clarifying jury verdict and judgment." The Nelson entities argued therein that the trial court should amend the final judgment to reflect that (1) judgment in favor of Fein Designs should be against Nelson Hong Kong, not Nelson USA; (2) Nelson USA's judgment against Fein Designs should not be set off against Fein Designs' judgment against Nelson Hong Kong; and (3) Nelson USA was entitled to prejudgment interest in an amount greater than that calculated by the trial court.
 {¶ 79} This Court has explained the proper function of a nunc pro tunc order:
 "A nunc pro tunc order may be issued by a trial court, as an exercise of its inherent power, to make its record speak the truth. It is used to record that which the trial court did, but which has not been recorded. It is an order issued now, which has the same legal force and effect as if it had been issued at an earlier time, when it ought to *Page 33 
have been issued. Thus, the office of a nunc pro tunc order is limited to memorializing what the trial court actually did at an earlier point in time. * * * It can be used to supply information which existed but was not recorded, to correct mathematical calculations, and to correct typographical or clerical errors. * * *
 "A nunc pro tunc order cannot be used to supply omitted action, or to indicate what the court might or should have decided, or what the trial court intended to decide. Its proper use is limited to what the trial court actually did decide. * * * That, of course, may include the addition of matters omitted from the record by inadvertence or mistake of action taken. * * * Therefore, a nunc pro tunc order is a vehicle used to correct an order previously issued which fails to reflect the trial court's true action." State v. Stevens (Aug. 2, 1995), 9th Dist. No. 16998, quoting State v. Greulich (1988), 61 Ohio App.3d 22, 24-25.
 {¶ 80} In this case, the Nelson entities were effectively attempting to persuade the trial court to reconsider its final judgment. The trial court did not issue any ruling on the motion.
 {¶ 81} "Once an order has been journalized by a trial court as a final appealable order, that order cannot be modified or vacated except as provided under Civ.R. 50(B) (motion notwithstanding the verdict), Civ.R. 59 (motion for a new trial), or Civ.R. 60(B) (motion for relief from judgment)." Metro. Bank Trust Co. v. Roth, 9th Dist No. 21174, 2003-Ohio-1138, at ¶ 14, quoting Krumheuer v. Flowers Versagi CourtReporters (Nov. 6, 1997), 8th Dist. No. 72431. "The Ohio Rules of Civil Procedure do not prescribe motions for reconsideration after a final judgment in the trial court." Pitts v. Ohio Dept. of Transp. (1981),67 Ohio St.2d 378, paragraph one of the syllabus. Accordingly, "motions for reconsideration of a final judgment in the trial court are a nullity." *Page 34 
Id. at 379. As Nelson's motion for an order nunc pro tunc clarifying the jury verdict and judgment was effectively a motion for reconsideration of an order journalized by the trial court as a final, appealable order, it is a nullity properly not addressed by the trial court.
 {¶ 82} Further, this Court will not consider as error any issue of which a party was aware but failed to properly bring to the attention of the trial court. Brody v. SCR-SCP, Inc., 9th Dist. No. 06CA0062-M,2007-Ohio-1477, at ¶ 7. It is axiomatic that a motion which is a nullity cannot bring an issue to the court's attention. As Nelson USA failed to properly raise and preserve these issues before the trial court, it has waived these issues on appeal. The Nelson entities' third cross-assignment of error is overruled.
 III. {¶ 83} Fein Designs' four assignments of error are overruled. The Nelson entities' three cross-assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into *Page 35 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. Costs taxed to the parties equally.
SLABY, P. J. MOORE, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.)
[1] The trial court failed to enunciate which of Fein Designs' counterclaims it was reinstating, but this Court infers from subsequent actions by the trial court and parties that all five counterclaims were reinstated.
[2] This Court does not here address the merits of Fein Designs' motion for relief from judgment, and whether the motion alleged the necessary operative facts, because appellees do not raise those issues on cross-appeal.
[3] The trial court directed a verdict in favor of "the plaintiff" in regard to all of Fein Designs' counterclaims except the breach of contract claim.
[4] Due to a banking error, Nelson Hong Kong did not receive the wire transfer until July 4, 2002. *Page 1